UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH STEGALL and GALE
STEGALL,                                                          Civil No. 04-70972
                                                                  Hon. John Feikens
       Plaintiffs,

       v.

ROBERT AUDETTE, JEFF BELLOMO,
JEREMY CHANNELLS, DANIEL
EMERY, ANNE MOTT, DEAN
MUCZYNSKI and RAY SOTO, jointly
and severally and in their individual
capacities, and CITY OF DETROIT,

       Defendants.

_____/

**OPINION AND ORDER**

Plaintiffs' claims against Defendants, the City of Detroit (the "City") and the individual police officers, are all based on Defendants alleged violations of Plaintiffs' constitutional rights. Plaintiffs' action arises out of Defendant police officers alleged inappropriate actions in subduing Plaintiffs to stop their alleged interference with Defendants' arrest of Plaintiffs' son. Plaintiffs bring six causes of action in their Complaint: (i) the individual officers' violations of the Fourth and Fourteenth Amendment; (ii) the municipality's constitutional violations; (iii) assault and battery; (iv) gross negligence; (v) false arrest; and (vi) false imprisonment. Defendants move for summary judgment.

For the reasons stated below, I GRANT in part and DENY in part Defendants' motion for summary judgment.

**I. FACTUAL BACKGROUND**

Plaintiffs Ralph and Gale Stegall are residents of the City of Detroit. (Pl.s' Am. Compl. ¶¶ 2-3.) Defendants Robert Audette, Jeff Bellomo, Jeremy Channells, Daniel Emery, Anne Mott, Dean Muczynski and Ray Soto are Detroit Police Officers. Id. at ¶¶ 4-10.

Plaintiffs own a home located at 11827 Duchess, Detroit, Michigan. (Pl.s' Am. Compl. ¶ 16.) On June 19, 2002, at around 10:12 a.m., Plaintiffs' son Ralph Stegall, Jr., stole a car. (Def.s' Mot. for Summ. J. at 1.) Officers Bellomo and Channells were involved in an automobile chase of Ralph Stegall, Jr. and the stolen car. Id. at 1. Ralph Stegall, Jr. lost control of the stolen car and collided with a curb. Id. at 1. At this point Ralph Stegall, Jr. ran and the police officers perused him on foot to Plaintiffs' backyard. Id. at 1.

Bellomo, Channells and Muczynski arrested Ralph Stegall, Jr. in Plaintiffs' backyard. Id. at 1. Then Bellomo went to the stolen car to preserve the scene. Id. at 1. Meanwhile Channells, Soto and Muczynski escorted Ralph Stegall, Jr. to their police car. Id. at 1. The parties differ over what occurred next.

Defendants claim that Plaintiff Ralph Stegall confronted officers Channells, Soto and Muczynski and attempted to pull Ralph Stegall, Jr. from the grasp of the officers by swinging his fists and yelling at the officers. Id. at 1. Defendants claim that they warned Plaintiff Ralph Stegall not to interfere in his son's arrest. Id. at 1. Defendants claim that Muczynski, Soto and Emery then pulled Plaintiff Ralph Stegall off of Channells and arrested Plaintiff, Ralph Stegall, for "interfering with city employees in the performance of their duty." Id. at 1. Defendants claim that Plaintiff Ralph Stegall resisted arrest and that the officers had to spray a chemical in his face to induce his physical compliance. Id. at 1.

However, Plaintiffs claim that they exited their house to investigate the incident in their backyard. (Pl.'s Am. Compl. ¶ 17.) Plaintiffs claim that the officers immediately ordered Plaintiff Ralph Stegall to get on the ground, "but before he even had time to react, Plaintiff Ralph Stegall was thrown to the ground, kicked, and sprayed in the face and eyes with pepper spray." Id. ¶ 18. Plaintiff Gale Stegall allegedly asked Officer Mott why the officers were arresting her son and in response Mott "pushed Plaintiff Gale Stegall against a car parked in the driveway, sprayed pepper spray into her face and eyes, and choked her by placing her hands around Plaintiff Gale Stegall's neck." Id. ¶ 17.

Defendants claim that afer Soto and Emery handcuffed Plaintiff Ralph Stegall, he was taken to a police scout car. (Def.s' Mot. for Summ. J. at 1-2.) Mott and Emery then transported Plaintiff to the Ninth Precinct police station. Id. at 2. Defendant Audette was not at the scene of the incident his only involvement was to present Plaintiff Ralph Stegall's warrant request to a prosecutor. Id. at 2.

Plaintiffs also state that Defendants refused Plaintiff Ralph Stegall "any medical treatment" while he was at the Ninth Precinct police station unless Plaintiff Ralph Stegall signed a statement. (Pl.'s Resp. at 2.)[1]

## II. ANALYSIS

Defendants argue that they are entitled to summary judgment on these claims because: (i) Plaintiffs cannot show that Defendant City of Detroit had a policy or custom which authorized or encouraged excessive force or arrest and imprisonment without probable cause; (ii) Defendants

---

[1] However, in their complaint Plaintiffs do not raise any claims based on Defendants refusal to provide adequate medical treatment. (Pl.s' Am. Compl.)

3

Bellomo, Channells, Emery, Mott and Soto did not arrest or use excessive force against Plaintiff Ralph Stegall; (iii) Defendant officers are entitled to qualified immunity; (iv) Defendant male officers did not have contact with Plaintiff Gale Stegall; and (v) Defendant officer Mott did not have any contact with Plaintiff Gale Stegall.

## A. Motion for Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must view the evidence and any inferences drawn from the evidence in a light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted), Redding v. St. Edward, 241 F.3d 530, 532 (6th Cir. 2001).

The burden on the moving party is satisfied where there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). For a claim to survive a motion for summary judgment, the respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has some discretion to determine whether the respondent's claim is plausible. Betkerur v Aultman Hosp. Ass'n, 78 F.3d 1079, 1087 (6th Cir. 1996). See also, Street v J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989).

## C. § 1983 Municipal Liability

4

Plaintiffs allege in their complaint that Defendants' constitutional violations were a result of "the training and/or lack of training, policies, procedures, and customs adopted by the Detroit Police Department and Defendant City[.]" (Pl.s' Am. Compl. ¶ 30.)  Defendant City of Detroit claims that it is entitled to summary judgment because Defendants can not demonstrate a City of Detroit policy or custom, promulgated by a policymaker, was the moving force behind Plaintiffs' alleged injury.  (Def.s' Mot. for Summ. J. at 3.)

Plaintiffs fail to present any facts which would link the conduct of the individual officers to a policy of the City of Detroit or its police department as required to show a § 1983 municipal violation.  Shamaeizadeh v. Cunigan, 338 F.3d 535 (6th Cir. 2003).  A municipality may only be found liable under § 1983 "where the municipality *itself* causes the constitutional violation at issue."  Canton v. Harris, 436 U.S. 658, 385 (1988).  A plaintiff, bringing a § 1983 municipal liability claim, must allege:

> an unconstitutional action that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or a "constitutional deprivation [ ] visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decisionmaking channels."

Shamaeizadeh, 338 F.3d 535, 556; citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978).  A plaintiff may bring an action under § 1983 regarding a city's policy or custom only where "a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the [citizens'] rights [...]."  Canton, 436 U.S. at 389.  In other words, the city's policymakers must make a "deliberate choice to follow a course of action [...] from among various alternatives" for a municipality to be liable under § 1983.  Pembaur v. Cincinnati, 475 U.S. 469, 483-4 (1986) (plurality); see also Canton, 436 U.S. at 389.

5

Plaintiffs present no evidence that the City of Detroit's police training policies show deliberate indifference to Plaintiffs' constitutional rights. Moreover, Plaintiffs also fail to demonstrate any specific custom, policy or practice with respect to the officers' training or with regard to the officers' alleged illegal acts.

Thus, I GRANT Defendants' motion for summary judgment with respects to Plaintiffs' § 1983 municipal liability claim.

### D. § 1983 Claims Against Individual Defendants

Plaintiffs claim that the individual Defendants used "unreasonable and excessive force to restrain Plaintiffs" and that in doing so Defendants violated Plaintiffs' Fourth Amendment rights. (Pl.s' Am. Compl. ¶ 26.) Defendants argue that: (i) Plaintiff has not identified the proper Defendants; (ii) the named Defendants did not use excessive force against Plaintiffs; and (iii) even if Defendants did use excessive force against Plaintiffs those Defendants are entitled to summary judgment on these claims. (Def.s' Mot. for Summ. J. at 4, 7.)

*1. Defendants Audette, Bellomo, Channells and Mott*

Defendants argue that Defendants Audettte, Bellomo, Channells and Mott are entitled to summary judgment because they were not present at the scene of the arrest or alleged assault, and therefore, did not use excessive force against Plaintiff. (Def.s' Mot. for Summ. J. at 5, 6.) Plaintiff Ralph Stegall admits that he cannot identify any of the officers who allegedly arrested and assaulted him. Id. at Ex. 3 (R. Stegall's Dep.) at 27. Plaintiffs Ralph and Gale Stegall are not certain how many officers assaulted Plaintiff Ralph Stegall, yet they claim there were either four or five officers. (Pl.s' Resp. at Ex. A (R. Stegall's Dep.) at 28; Ex. B (G. Stegall's Dep.) at 27.) Plaintiffs offer no plausible evidence that Defendants Audette, Bellomo, Channells or Mott

6

participated in Plaintiff Ralph Stegall's arrest or used excessive force against him.

Defendant Audette states that he "never had any personal contact with Plaintiff Ralph Stegall Sr." and he has "never been present at the address of the incident[.]" Id. at Ex. 1 (Audette's Aff.) ¶¶ 3, 5. Plaintiffs also concede that Defendant Audette was not at the scene of the incident. (Pl.s' Resp. at 3.)

Defendant Bellomo also testifies that he was not present during Plaintiff Ralph Stegall's arrest. Id. at Ex. 5 (Bellomo's Aff.) ¶ 3. After the arrest of Plaintiff Ralph Stegall's son, Bellomo walked back to the stolen vehicle to "preserve the scene." Id. at Ex. 5 (Bellomo's Aff.) ¶ 4. Bellomo states that he did not arrest or observe the arrest of Plaintiff Ralph Stegall. Id. at Ex. 5 (Bellomo's Aff.) ¶ 5.

Officer Muczynski states that he pepper sprayed Plaintiff Ralph Stegall and officers Emery and Soto handcuffed Plaintiff Ralph Stegall. Id. at Ex. 2 (Muczynski's Aff.) ¶¶ 4-8. Defendants claim that officer Channells continued to escort Ralph Stegall Jr. to a police scout car while Muczynski, Emery and Soto arrested Plaintiff Ralph Stegall. Id. at 6. Furthermore, Defendants claim that Mott also was not involved in the arrest of Plaintiff Ralph Stegall. Mott states that she only transported Plaintiff Ralph Stegall to the police station. Id. at Ex. 4 (Mott's Aff.) ¶¶ 6-9.

Plaintiffs' only offer their own admittedly vague and uncertain recollections to establish, by apparently guessing, that all the officers (with the exception of Mott) attacked Plaintiff Ralph Stegall, however, they provide no credible evidence to support their position. (Pl.s' Resp. at Ex. A (R. Stegall's Dep.) at 28; Ex. B (G. Stegall's Dep.) at 27.)

It is implausible that Defendants Audette, Bellomo, Channells or Mott even participated

in the arrest of Ralph Stegall, and, with the exception of Mott, there is no allegation that they used excessive force against Plaintiff Gale Stegall.  Therefore, I GRANT Defendants' motion for summary judgment with respect to all claims against Defendants Audette, Bellomo and Channells, and dismiss all of Plaintiff Ralph Stegall's claims against Mott.

### 2. *Fourth Amendment Protection*

In Graham v. Connor, the U.S. Supreme Court stated that "*all* claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' [...] should be analyzed under the Fourth Amendment and its 'reasonableness standard [...]."  490 U.S. 386, 395 (1988).

The Fourth Amendment of the United States Constitution provides that individuals shall be free from warrantless unreasonable seizures in their persons.  U.S. Const. Amend. IV.  To establish § 1983 liability a plaintiff must demonstrate more than a "seizure" alone; "the seizure must be 'unreasonable.'"  Brower v. County of Inyo, 489 U.S. 593, 599 (1989).  The Supreme Court teaches that a proper application of the "reasonableness" test requires a court consider whether the facts and circumstances justify a particular type of seizure.  Graham, 490 U.S. at 396.  A court should make the inquiry of whether the officers' actions were "objectively reasonable" with respect to the facts and circumstances "without regard to their underlying intent or motivation."  Id. at 397.  Factors that are relevant include: "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight."  Id. at 396.  The Supreme Court held that "reasonableness" must make an allowance for the police officers' judgments that must be made in circumstances that are "tense, uncertain and rapidly evolving[,]"

8

and therefore, "[n]ot every push or shove," violates that Fourth Amendment. Graham, 490 U.S. at 396-7.

### a.  Plaintiff Ralph Stegall

Plaintiff Ralph Stegall claims that there was no "crime at issue," and he presents his own testimony and his ex-wife's testimony to demonstrate that.  Plaintiff claims that the police ordered him to get to the ground "but before he even had time to react, Plaintiff Ralph Stegall was thrown to the ground...." (Pl.s' Am. Compl. ¶ 20.)   Plaintiff claims that Defendant officers then pepper sprayed his face and repeatedly kicked him.  (Pl.s' Resp. at 1.)  However, this statement is implausible.  Plaintiff admits that instead of immediately getting to the ground when ordered to do so, he questioned the officer's order.  (Pl.s' Resp. at Ex. A at 28.)  In fact, in Plaintiff's own words, the officer more than once ordered Plaintiff to get on the ground before Plaintiff complied with the police order.[2]  Id. at Ex. A at 28.  Therefore, Plaintiff's sworn testimony does not support his claim.

Plaintiff Ralph Stegall offers only his own testimony and that of his ex-wife to support his version of events.  Plaintiffs' stories are inconsistent with each other and their own brief,

---

[2] "[H]e's telling me get on the ground, and I'm saying, 'What did I do?'  'Get on the ground.'  And they just threw me on the ground."  (Pl.s' Resp. at Ex. A at 28.)

Plaintiff Gale Stegall in describing the incident conveniently omits her husbands' responses to the police officer and claims that the Defendant officers started "jumping on him and beating him" after Plaintiff Ralph Stegall was already on the ground.  (Pl.s' Resp. at Ex. B at 20.)  Thus, Plaintiffs provide this Court with three different stories of the events that occurred at their home.

It is improper for a witness to contradict deposition testimony by an affidavit or declaration for the purpose of avoiding summary judgment. See, e.g., Reid v. Sears, Roebuck and Co., 790 F.2d 453, 460 (6th Cir.1986); Downer v. Detroit Receiving Hosp., 191 Mich.App. 232 (1991). Since the Plaintiffs' sworn statements in their depositions contradict their unsworn declarations in Plaintiffs' brief, this Court will disregard Plaintiffs' attempt to create a dispute regarding whether Plaintiff complied with the police order.

however, despite the lack of credibility, this Court must view the evidence in a light most favorable to the Plaintiffs.  Plaintiff further testifies that he never touched any of the officers, and argues that even if Plaintiff Ralph Stegall did not immediately submit to the officer's requests, the Defendants' reaction was allegedly excessive.  See Gonzalez v. City of Santa Monica, 88 Fed.Appx. 161, 162 (9th Cir. 2004) (holding that a reasonable jury could conclude that the defendant officers used excessive force where they allegedly pepper sprayed the plaintiff and beat him for allegedly only shouting at the officers and otherwise not interfering with their arrest of the plaintiff's brother).

     Other courts denied summary judgment where a jury could believe the plaintiff's story that the plaintiff posed no immediate threat to the defendant officer.  See Gouskos v. Griffith, 122 Fed. App. 965, 974-77 (10th Cir. 2005) (reversing the district court which granted defendant's motion for summary judgment by discounting the plaintiff's testimony.  The Court of Appeals held that where the plaintiff was not responding to defendant police officer with threats of violence, and there were no dangerous circumstances, the plaintiff, who was picking up his daughter from an out-of-control party, could not reasonably be perceived as a threat.); Cummings v. Libby, 2001 WL 1255899, at *4 (D.Me. Oct. 19, 2001) (Magistrate's recommendation) (finding that where the plaintiff's testimony challenged the defendant's evidence it is impossible to conclude that the plaintiff posed an immediate threat to the safety of the officers by "being loud and screaming and refusing to leave" and trying "to resist arrest by pulling away" from defendant.); Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002) ("Courts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and

there is no threat to the officers or anyone else.").

Therefore, I DENY Defendants Muczynski, Emery and Soto's motion for summary judgment with respect to Plaintiff Ralph Stegall's claims.

### b.  Plaintiff Gale Stegall

Plaintiff Gale Stegall, who is legally blind, cannot identify the officer who assaulted her. (Pl.s' Resp. at Ex. B (G. Stegall's Dep.) at 29.)  Plaintiff Gale Stegall only alleges that she was attacked by a female office with "brownish colored hair" who "was about [Plaintiff's] height" and that officer departed in a police car numbered #003419 and had "tactical written across the bottom."  Id. at Ex. B at 29; Ex. E (Citizen's Compl.) at 1.

Officer Mott is the only female officer named in Plaintiffs' complaint.  Plaintiffs do not bring any claims against "Jane Doe."  Defendant Mott claims that she did not have any contact with Plaintiff Gale Stegall on the date of the incident.  (Def.s' Mot. for Summ. J. at 9.)  Officer Mott "was present at the scene, along with other white female police officers [...]."  Id. at 9.

Plaintiff Gale Stegall, however, does not recant her statement regarding the description of the alleged female officer's car.  Despite Mott's assertion, Plaintiffs continue to insist that Mott was the only female officer at the scene of the incident.  (Pl.s' Resp. at 9.)  Defendants responsed to Plaintiffs' interrogatory for "a copy of all activity logs prepared in relation to the incident," by providing "Activity Logs" for the named Defendants and therefore, Plaintiffs claim that there were no other female officers at the scene.  (Pl.s' Resp. at 9.)  However, another female officer could have been present at the scene of the incident and intentionally or mistakenly failed to fill out an "Activity Log."  The alleged female officer could have used a Tactical Services car numbered #003419.

Mott continues to explain that she used a "non-specialized police scout car, #003297" and not a "Tactical Services scout car." Id. at 9; citing Ex. 4 ¶ 15.  However, Plaintiffs offer no evidence that Mott drove the car that Plaintiff Gale Stegall described or that Defendant Mott was the female officer who used excessive force against Plaintiff Gale Stegall.  On the other hand, Mott offers her testimony to demonstrate that she was not the same female officer who used excessive force against Plaintiff Gale Stegall.

Plaintiff Gale Stegall is unable to show any plausible evidence that any named Defendant used excessive force against her.  Therefore, I GRANT Defendants' motion for summary judgment with respect to all claims against all Defendants respecting Plaintiff Gale Stegall's claims.[3]

**E.  Qualified Immunity**

Defendants argue that even if they used excessive force they are entitled to qualified immunity.  (Def.s' Mot. for Summ. J. at 8-9.)  I hold that Plaintiff Ralph Stegall has properly alleged an excessive force claim with respect to Defendants Muczynski, Soto and Emery, therefore, I address Defendants' qualified immunity defense only with respect to that claim against those Defendants.

The U.S. Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 818 (1981), held that "government officials performing discretionary functions are entitled to a qualified immunity from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Courts

---

[3] I note that having granted Defendants' motion with respect to all of Gale Stegall's claims and with respect to Ralph Stegall's claims against Mott.  I reiterate that I GRANT Defendants' motion for summary judgment with respect to all claims against Mott.

12

deciding whether a party is entitled to qualified immunity must consider: (1) whether, based on the facts, viewed in a light most favorable to the party asserting the injury, the officer's conduct violated a constitutional right; and (2) if so, "whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case." Saucier v. Katz, 533 U.S. 194, 201 (2001); see Brosseau v. Haugen, 2004 WL 2847251 (2004).

The Sixth Circuit teaches that "[f]or a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Burchett v. Kiefer, 310 F.3d 937, 942 (6th Cir. 2002); citing Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992). The Sixth Circuit stated that whether an officer would understand that what he is doing violates an individual's right is measured objectively. Brandenburg v. Cureton, 882 F.2d 211, 215 (6th Cir. 1989). The U.S. Supreme Court clarified that the unlawfulness of the officer's act must be apparent, although the particular act at issue does not need to have been held unlawful. Burchett, 310 F.3d at 942; citing Anderson v. Creighton, 483 U.S. 635, 640 (1987).

The contours of the right to be free from excessive force are sufficiently clear. In Gonzalez, the Ninth Circuit held that "the law governing excessive force was clearly established at the time of the alleged incident, [and] qualified immunity would be inappropriate under the facts alleged." 88 Fed.Appx. at 162 (the plaintiff alleged that although he was shouting at officers he did not touch them, yet the defendant officers pepper sprayed him and beat him); citing Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1199 (9th Cir. 2000). Another judge on this court held that "it is clear that Defendants' alleged conduct would have violated rights that were clearly established on May 17, 1998." Williams v. Belknap, 154

13

F.Supp.2d 1069, 1073 (E.D. Mich. 2001) (that plaintiff claimed that those "Defendants tackled, pinned to the ground, sprayed irritant into the eyes of, and arrested, a woman who did nothing before or during the events in question to interfere with or resist police, or to otherwise violate the law."); citing Tapp v. Banks, No. 99-6563, 2001 WL 45103, at *5 (6th Cir. Jan. 10, 2001).

In Polk v. Hopkins, No. 04-1130, slip op. at 3, 10 (6th Cir. Apr. 29, 2005), the Sixth Circuit Court of Appeals held that an officer was not entitled to qualified immunity where the officer allegedly pushed the plaintiff down to the ground when the plaintiff did not respond to the officer's order to "get down on the ground." No. 04-1130, slip op. at 3, 10 (6th Cir. Apr. 29, 2005) (That plaintiff claimed that the defendant officer pushed her down, jerked her hand behind her back then stood on top of her while he handcuffed her. Allegedly, the officer jerked the plaintiff up by the handcuffs and forcefully pushed her in the police car injuring her "back, shoulder and leg."). The court stated that "a jury question exists as to whether the force [the defendant] used was reasonable." Id. at 8. Furthermore, the court held that "[the plaintiff's] right not to be subjected to excessive force after being handcuffed was clearly established at the time of the events in question." Id. at 9.

An officer's beating and pepper spraying an individual who complied with police orders is a clear violation of established law. I hold that if the Defendants Muczynski, Soto and Emery did perform the alleged acts despite Plaintiff Ralph Stegall's compliance with their orders then they are not entitled to qualified immunity.

Thus, I DENY Defendant officers' Muczynski, Soto and Emery's motion for summary judgement in respect to Plaintiff Ralph Stegall's claims.

**IV. CONCLUSION**

Plaintiffs are unable to demonstrate any facts which would link the conduct of the individual officers to a policy of the City of Detroit or its police department, therefore, I GRANT Defendants' motion with respect to all claims against the City of Detroit.

Furthermore, Plaintiffs are unable to establish that all the named Defendants are the individuals who allegedly used excessive force against Plaintiffs.  Therefore, I GRANT Defendants' motion with respect to all claims against Defendants Audette, Bellomo, Channells and Mott.

However, Plaintiff Ralph Stegall's claims against Defendant officers' Muczynski, Soto and Emery if true do state plausible claims which are not protected by qualified immunity. Therefore, I DENY Defendants' motion regarding Defendants Muczynski, Soto and Emery only with respect to Plaintiff Ralph Stegall's claims.

Accordingly, with the order of discovery stating that the cutoff for discovery was January 31, 2005, the case is therefore set for trial on August 2, 2005.  The parties have indicated they wish to have this case proceed to arbitration and if that is so they should communicate that in writing to this Court.


**Date:  July 7, 2005**                     **S/John Feikens**
                                             **United States District Judge**

> Proof of Service
>
> I hereby certify that the foregoing order was served on the attorneys/parties of record on July 7, 2005, by U.S. first class mail or electronic means.
>
> S/Carol Cohron
> Case Manager